Opinion of the Court.
THIS is an action of assumpsit for money had and received, and on the issue of non assumpsit, a verdict was found for the plaintiff below, from which the defendant has appealed ; and the only question deserving the attention of this court is, did the court below err in refusing to grant the appellant a new trial, because the verdict was against law and the evidence of the case ?
The appellant was a constable, and had in his hands sundry executions against a certain William Winn, which he levied accordingly. The appellee informed the appellant, that he and a Mr. Bradley had agreed to replevy the debt, and that the appellant might put his name to the replevin bond, provided Bradley signed his. The executions were returned replevied, with the appellee alone security; and his name was signed in the hand writing of the appellant. Bradley’s name was not affixed to any of the bonds, although he is named in the body of some of them. Of the executions on these replevin bonds, the appellant appears to have had the control, though it does not certainly appear, that they were for his benefit. He, however, caused them to be issued, and placed them himself, in the hands of a constable of a neighboring county where the appellee resided, and this latter constable there made the whole money out of the estate of the appellee, and paid it to the appellant; and it does not *288 appear in the cause, that he has ever accounted for it to the plaintiffs in the execution. If the appellant subjected the appellee to the payment of this money, by setting his name to the replevin bonds without authority for doing so, and then received the money himself, the moral right to recover it back is clear. If, on the contrary, the appellant was authorised, positively and unconditionally, to affix the name of the appellee as one of the securities, under the expectation only, that another security would execute the bonds, the appellee ought not to recover more than one moiety, if to that amount. One question then is, was the authority given to the appellant, to sign and execute these bonds for him, conditional or absolute ? It is certain, the appellee was willing to run the risk of paying a moiety of the money, as one security, and to be a joint security with Bradley; but it is clear, that he might be thus willing to run this risk, and yet not be bound to do it, and not have actually authorised the appellant to bind him, only conditionally; and if this authority was exceeded, and the event never happened, on which, the appellant was to bind him, the replevin bond could not be his deed. Two witnesses, one introduced by the plaintiff below, and one by the defendant, are positive that the appellee did authorise the appellant to set his name to the replevin bonds, provided Bradley would set his. A third, stated that he heard no such condition but he understood that Bradley was to enter as one of the securities, and the appellant was to affix the appellee’s name. The proof of this witness is of a negative character, and not very satisfactory. The statements of all may be true; and, of course, that which is affirmative ought to prevail. Suppose, however, the fact to be doubtful, and that the proof did not clearly ascertain whether the authority was to be exercised certainly or eventually; this was a matter proper for the consideration of the jury, and they having decided in favor of the appellee, the verdict ought not to be set aside, because it is against the evidence.
No action will lie to recover the money collected on an illegal replevin bond, unless the bond has been quashed or set aside.
*288 1. On the law of the case, there is, however, more room for doubt; and the question is presented, whether the appellee could, in this action, contest the replevin bonds and recover back the money; or, did the bonds, like judgments, estop him, until they were annulled and reversed ?
A justice of the peace has the same authority to quash an illegal or irregular replevin bond, taken on an execution issued by him, as courts have.
It is very clear, that money recovered by judgment of a court of competent jurisdiction, cannot be recovered back in this mode. The judgment is conclusive, until it is reversed, and then the action lies.
It is true; there is this difference, in fact, between a judgment and a replevin bond, with regard to a security, who first becomes a party by executing the bond: In the first case, the party is ascertained to be liable by a judicial sentence; in the second, the bond is taken en pais by a ministerial officer, whose acts are more contestable than the acts of a court. But although the taking a replevin bond is the act of a ministerial officer, and of course is subject to the control of a court; yet the law has attached greater weight to it than ordinary ministerial proceedings, and raised it from the grade of a ministerial, to a judicial act, by declaring that the bond shall have the force of a judgment. Of course, the bond must be respected as conclusive, until it is quashed. True, such bonds are subject to be questioned and quashed by the court; but this is in the nature of an appeal from the officer to the court, to correct his acts. Until this is done, his acts must be taken as conclusive; and it might be jeopardizing, to some extent, the rights of creditors, to allow securities to sustain such actions, and recover back money on replevin bonds, which were still allowed to remain valid ; and such bonds would be brought into issue in this collateral mode, instead of attacking them by a direct proceeding, and annulling them. Hence, we conceive that the replevin bonds in this instance, as they were never annulled, remain a bar to the plaintiff below, until they are set aside.
2. In answer to this, it may be urged, that a justice of the peace, before whom these bonds are returned, has no power to quash them. This we are not disposed to admit. He has jurisdiction of the subject matter, and consequently must possess, not only the powers to complete his judgments, but to correct the acts of the ministerial officers. We cannot construe the jurisdiction given to that body of magistracy, so strictly, as to suppose, that they may proceed to judgment, and then cease, and not be able to control the execution of that judgment; that they must receive every bond returned to them by a constable, under the name of a replevin bond, and issue execution to enforce it, and yet *290 have no power to determine upon its validity, when applied to for that purpose. It has been urged, that they cannot suspend proceedings by writ of error coram vobis, until the matter is heard. Admit this to be correct ; they can act by motion, and if the legislature has not furnished them with power of issuing a supersedeas, or the manner in which such proceeding must be conducted, it is not the fault of this court. Possessing the power to quash, they must proceed to exercise it, in such mode as they are authorised to act, until better is furnished them. We hence conclude, that against the obligatory force of these replevin bonds the plaintiff below cannot recover, and a new trial ought to have been granted, on the law of the case.
The judgment must be reversed with costs, the verdict set aside, and new proceedings be directed, accordant with this opinion.